Cornelius WALKER, Jr., Appellant,

v.

Vernon L. PEPPERSACK, Warden, Maryland Penitentiary, Appellee.

No. 8655.

United States Court of Appeals Fourth Circuit.

Argued Jan. 21, 1963.

Decided March 27, 1963.

Daniel J. Meador, Charlottesville, Va. (court-assigned counsel) [F. D. G. Ribble, Charlottesville, Va., on brief], for appellant.

Robert F. Sweeney, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge.

This is an appeal by Cornelius Walker, Jr., a prisoner of the State of Maryland, from a decision of the United States District Court for the District of Maryland denying relief in habeas corpus proceedings and dismissing his petition.

Walker was tried on December 22, 1959, in the Criminal Court of Baltimore before a judge, without a jury, on a charge of armed robbery. He was found guilty and was sentenced to imprisonment for a term of twenty years. At the trial the prosecution presented evidence showing that a robbery had occurred at a cut-rate liquor store in Baltimore on the night of November 11, 1959. In the store was a display case where watches and jewelry were kept for sale. Two men, one of whom was later identified by a prosecuting witness as Walker, came into the store. Walker had a gun. They took about fifteen "Genova" watches and some money from the cash register and departed.

Walker had at times lived or resided in an apartment at No. 8 Bond Street in Baltimore with one Estelle Jackson who was "sometimes referred to as his common-law wife", according to the District Judge. On the day following the rob-

bery, a police sergeant and three city detectives went to 8 Bond Street shortly after noon. Finding no one there, without a search warrant and without permission from anyone, these officers entered the apartment, searched it and found in a brown paper bag seven "Genova" watches and $6.91 in pennies. Within a short time after the search and without an arrest warrant, the police arrested Walker and another person on the street nearby.

■ At trial the paper bag, these watches and the coins were introduced in evidence by the prosecution. Walker's court-appointed counsel then interposed no objection although he later moved to strike this evidence on the ground that these articles were obtained by the state through an illegal search. The motion to strike was denied by the trial court, seemingly, as stated by the District Court, on the principal ground that only "one who has control of the premises" can object to the search and Walker did not have the requisite control. However, both Estelle Jackson and Walker testified that they were living there at the time of the search and at one point Walker spoke of the apartment as "my house"; he further testified that on the night of the robbery Estelle Jackson admitted him to the apartment as he had lost his key. Factually the trial court appears to have been in error because the testimony clearly shows that Walker was living in that apartment at the time of the search.

Following his conviction and then represented by another court-appointed attorney, Walker appealed to the Court of Appeals of Maryland on the sole ground that the evidence was insufficient to support the guilty verdict. His conviction was affirmed.[1] Thereafter he proceeded in the Baltimore Criminal Court under the Uniform Post Conviction Procedure Act of Maryland[2] where he challenged the constitutional validity of his conviction and sentence on the ground, inter alia, that evidence obtained by an illegal search and seizure had been introduced against him at his trial. His petition for relief was denied in April 1961 for the reason that, because of his failure to raise the point on direct appeal, he had waived objection to the admission of that evidence and was thus precluded in the post-conviction proceeding from attacking the legality of the search and the use at the trial of the evidence secured thereby. Application for leave to appeal from this decision was denied by the Court of Appeals of Maryland.[3] Walker's application to the Supreme Court of the United States for certiorari was denied.[4]

■ On February 1, 1962, Walker filed his verified petition for a writ of habeas corpus in the United States District Court for the District of Maryland alleging, in substance, that he was confined in violation of the United States Constitution because his conviction and sentence were obtained through the use of unlawfully seized evidence. His petition contained the general allegation that he had exhausted his state remedies and, inter alia, the specific allegation that he had applied to the Supreme Court of the United States for certiorari following affirmance of his conviction by the Court of Appeals of Maryland on direct appeal, which application was denied. Pursuant to a show cause order, the appellee (hereinafter referred to as "Warden") filed an answer asserting only that the petition should be dismissed without a hearing because Walker's claim of violation of his constitutional rights had been theretofore fully considered and determined since he had made substantially the same claim in the state courts under the Post Conviction Procedure Act and had been denied relief. Thus, there was no jurisdictional issue

1. Walker v. State, 223 Md. 243, 164 A.2d 287 (October 14, 1960).

2. Art. 27, § 645A et seq., Anno.Code of Maryland (1957).

3. Walker v. Warden, 226 Md. 653, 172 A. 2d 407 (July 10, 1961).

4. Walker v. Warden, 368 U.S. 960, 82 S. Ct. 405, 7 L.Ed.2d 391 (January 8, 1962).

as to exhaustion of state remedies raised by the answer. The District Court, after a hearing at which Walker was personally present and represented by court-appointed counsel, denied relief and dismissed the petition. The District Judge said, in a written opinion, that he found no basis for holding that the search and seizure were illegal even though he did find that there was no search warrant and that the officers went into the apartment without permission. The District Judge further held that, in any event, Walker had waived this point by failing to raise it on appeal to the Court of Appeals of Maryland. He noted that the Baltimore Criminal Court, on post-conviction hearing, had refused to consider the question of the legality of the search and seizure because it was not raised on appeal; therefore, he concluded that the question was not reviewable on federal habeas corpus.

The Warden now undertakes, in his brief on appeal, to question Walker's exhaustion of state remedies, asserting that Walker did not apply to the Supreme Court of the United States for certiorari following affirmance of his conviction by the Court of Appeals of Maryland on direct appeal. The District Judge did not consider this question or make a finding with reference thereto in view of his other findings and conclusions stated in support of the denial of relief. However, in his written opinion he did observe that "counsel for the state contends" that Walker failed to apply for certiorari following affirmance of his conviction on direct appeal. Our only knowledge of the proceedings before the District Court is gleaned from that court's opinion. Perhaps counsel for the Warden may have sought to raise this question below in oral argument but there is nothing before us to indicate anything other than a bare and unsupported contention that Walker had failed, in this one allegedly necessary particular, to exhaust available state remedies.

The Warden could properly have raised an issue as to Walker's failure to exhaust state remedies by an appropriate allegation in his answer to the show cause order but he did not do so. Title 28 U.S.C. § 2248 provides:

> "The allegations of a return to the writ of habeas corpus or *of an answer to an order to show cause* in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." (Emphasis supplied.)

In his brief the Warden suggests a negative approach to the ascertainment of facts allegedly determinative of this question by stating—"Appellee avers that an examination of the records contained in the office of the Clerk of the Court of Appeals of Maryland and the records in the office of the Attorney General of Maryland indicate that no such application [for certiorari following direct appeal] was, in fact, made." Perhaps the Warden means that he has made such examination and that his statement in his brief of the results of such examination should be accepted by us as proof of Walker's failure to apply for certiorari. Surely he does not intend to suggest that this court should make an examination of these records. In what manner, then, was the question raised below other than as stated by the District Court—"counsel for the state contends"—and what evidence, if any, was offered to support the contention? We suggest that the Warden could have avoided these apparent uncertainties by a specific allegation in his answer that Walker failed to apply for certiorari following the direct appeal of his conviction. 28 U.S.C. § 2248, supra. Walker does not discuss this question in his brief and understandably so, since it is apparent that neither he nor his counsel had fair notice or indication that federal jurisdiction would be seriously challenged on this ground. We respectfully further suggest that it is the better practice to raise such issues by specific allegations in the answer to the show cause order, and by specific denial of the truth of allegations contained in the petition for habeas corpus.

■ However, assuming that an issue as to the failure to exhaust available state remedies had been properly raised below and is properly before us, we conclude that the Warden's contention is without merit. A brief summary of the steps admittedly taken by Walker follows. After his conviction, he appealed directly to the Court of Appeals of Maryland assigning as his only ground the insufficiency of the evidence. He then sought in the post-conviction proceeding to raise the constitutional question as to the use, at the trial, of evidence obtained through the allegedly unlawful search but it was held, purely on state procedural grounds, that he had waived objection to the admission of such evidence because of his failure to raise the point on direct appeal. The Court of Appeals of Maryland then denied leave to appeal and the Supreme Court of the United States denied application for writ of certiorari.

Title 28 U.S.C. § 2254 provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

In Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950), Darr, a prisoner of the State of Oklahoma, had been convicted of armed bank robbery. He took no direct appeal from his conviction but later applied to the Oklahoma Court of Criminal Appeals for habeas corpus alleging violation of his constitutional rights. These allegations were reviewed by the state court and the writ was denied *on the merits*. No application was made to the Supreme Court for writ of certiorari. A federal district court then denied Darr's application for habeas corpus on the ground that Darr's failure to apply to the Supreme Court for certiorari was a failure to meet the requirement of exhaustion of state remedies. Ex parte Darr, 77 F.Supp. 553 (E. D.Okl.1948). The Court of Appeals affirmed, Darr v. Burford, 172 F.2d 668 (10th Cir., 1949). The Supreme Court granted certiorari and held that ordinarily where the highest state court in a collateral proceeding had considered, on the merits, the alleged violation of constitutional rights, application by the prisoner to the Supreme Court for a writ of certiorari was a necessary step in exhaustion of his state remedies. 339 U.S. at page 208, 70 S.Ct. at page 592, 94 L.Ed. 761. However, the Court further indicated that the rule was not inflexible and recognized a possible exception, i. e., where the petitioner pleads or proves the existence of exceptional circumstances or circumstances of peculiar urgency excusing his failure to apply for certiorari.

In Thomas v. Arizona, 356 U.S. 390, 392, 78 S.Ct. 885, 886–887, 2 L.Ed.2d 863 (1958), footnote 1, the Court said:

"* * * The normal rule that certiorari must be applied for here after a state conviction before habeas is sought in the District Court, Darr v. Burford, 339 U.S. 200 [70 S.Ct. 587, 94 L.Ed. 761] (1950), is not inflexible, however, and in special circumstances need not be complied with. Darr v. Burford, supra, at 210 [70 S.Ct. at 593, 94 L.Ed. 761]. 'Whether such circumstances exist calls for a factual appraisal by the [District Court] in each special situation. Determination of this issue, like others, is largely left to the trial courts subject to appropriate review by the courts of appeals.' Frisbie v. Collins, 342 U.S. 519, 521 [72 S.Ct. 509, 96 L.Ed. 541] (1952).

Petitioner's failure to timely apply for certiorari was noted by the District Court in this case, but expressly was stated not to be the basis for its denial of habeas. Since that court and the Court of Appeals considered petitioner's application on the merits, we are not inclined at this late date to consider the procedural defect a fatal error."

In Mattox v. Sacks, Warden, 369 U.S. 656, 82 S.Ct. 992, 8 L.Ed.2d 178 (1962), a prisoner of the State of Ohio had been convicted of a felony. Immediately following his conviction he sought a writ of habeas corpus which was denied on the ground that appeal was the proper remedy. He then attempted to appeal but this was denied as out of time and the Supreme Court of Ohio affirmed this denial. He unsuccessfully sought habeas corpus twice more, the last petition being to the Supreme Court of Ohio and alleging, among other matters, a denial of counsel at his trial and a deprivation of rights guaranteed by the Due Process Clause of the Fourteenth Amendment. The Supreme Court of Ohio denied the petition, holding that habeas corpus was not a substitute for appeal and was not available to remedy the defects alleged by the prisoner. Thus, it appears that the constitutional question had not been considered *on its merits* by the courts of the State of Ohio and relief had been denied on an independent state ground. Upon petition for writ of certiorari to review the ruling of the Supreme Court of Ohio, the Supreme Court of the United States, in a short per curiam opinion, said:

"The petition for certiorari must be denied. The decision below and the several prior actions in the Ohio courts indicate that petitioner is without a state remedy to challenge his conviction upon the federal constitutional grounds asserted. In

these circumstances, Darr v. Burford, 339 U.S. 200, 208 [70 S.Ct. 587, 94 L.Ed. 761], *is not applicable and a prisoner may, without first seeking certiorari here, file his application for habeas corpus in the appropriate United States District Court.* [Emphasis following case citation supplied.] 28 U.S.C. § 2254. Massey v. Moore, 348 U.S. 105 [75 S.Ct. 145, 99 L.Ed. 135]; Frisbie v. Collins, 342 U.S. 519 [72 S.Ct. 509, 96 L.Ed. 541]. Petitioner's allegations, if true, would present serious questions under the Fourteenth Amendment, and those allegations would therefore entitle him to a hearing. * * *" 369 U.S. at 657, 82 S.Ct. at 993, 8 L.Ed.2d 178.

■ In the case at bar it is clear that the federal question of alleged violation of Walker's constitutional rights has not been considered *on the merits* by any court of the State of Maryland. On the authority of Mattox v. Sacks, supra, we hold that Walker was not required to apply to Supreme Court for certiorari following affirmance of his conviction on direct appeal in order to exhaust his state remedies. Furthermore, as we shall presently demonstrate, under Maryland's laws and procedural rules and the circumstances here, the processes of that state were ineffective at all stages of Walker's prosecution to protect his constitutional rights. He has exhausted available state remedies within the apparent meaning of the language of section 2254.[5] He can now have no further recourse to the Maryland state courts for relief.

■ We are told that the motion to strike evidence of the fruits of the warrantless search came too late since, under Maryland law, objection must be made when the evidence is offered. However, it has long been clear that, in felony cases, there is no bar under Maryland

---

5. This court has indicated its view that, in accordance with the apparent meaning of the language of § 2254, the exhaustion doctrine has reference only to *presently* available state remedies. Morrison v. Smyth, 273 F.2d 544 (4th Cir., 1960). We construe the holding in Mattox v. Sacks, 369 U.S. 656, 82 S.Ct. 992, 8 L.Ed.2d 178 (1962), as confirming our view expressed in the Morrison case.

law to the admission of illegally seized evidence.[6] The decision in the Mulcahy case, cited below, was handed down only a few months before Walker's direct appeal to the Court of Appeals of Maryland (see footnote 2). At the time of that appeal it seemed clear also that, because of the decision in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), the federal law did not prohibit the state's use of such evidence. Thus, contemplating both federal and state law, it would have been plain to any lawyer that raising, either at trial or on appeal, a question of the admissibility of this evidence might well have been characterized as frivolous—certainly futile as a practical matter.

In Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the Supreme Court held that in a *federal* prosecution the Fourth Amendment barred the use of evidence secured by means of an illegal search and seizure by *federal* officers. Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, decided thirty-five years after Weeks, involved a prosecution in a *state* court for a *state* crime where evidence admitted at the trial had been obtained by state officers under circumstances which would have rendered it inadmissible in a prosecution for violation of a federal law in a federal court. Although interpreting the *Fourth* Amendment as forbidding the admission of such evidence, the Court there held that in a prosecution in a *state* court for a *state* crime the Fourteenth Amendment did not forbid the admission of evidence obtained by an unreasonable search and seizure. The Wolf doctrine remained unchanged until the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (June 19, 1961), wherein the Court rejected and overruled Wolf and held that all evidence obtained by searches and seizures in viola-

tion of the Constitution is, by that same authority, inadmissible in a *state* court.[7]

■  We need cite only Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), as authority for our conclusion that Walker had "standing" to object to the use of illegally seized property discovered during the search of the apartment at No. 8 Bond Street. The evidence showed that he was actually occupying the apartment, living there for the time being. At the very least, he was there with the permission of Estelle Jackson, the other occupant. It is thus clear that Walker is in position to claim the constitutional protection against an unreasonable search and seizure.

■  The District Judge found no basis for holding that the search and seizure were illegal. With this finding we do not agree. The uncontradicted testimony at Walker's trial showed that when the police officers went to the apartment where Walker was living with Estelle Jackson, they did not have a warrant of any kind. There was no one in the apartment and no one gave the officers permission to enter. Nevertheless, they entered the apartment and, during the search, found and seized articles which were introduced in evidence against Walker at his trial. Later, on the day of the search and on the street nearby, Walker was arrested. There is not even a suggestion of any circumstance making it impracticable to obtain a search warrant.

This case comes squarely under Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). There law enforcement officers, acting upon a tip, went to a house rented by the defendant and, with the permission of the landlord, entered the house while no one

---

6. See, e. g., Mulcahy v. State, 221 Md. 413, 426, 158 A.2d 80 (1960); Barker v. Warden, 208 Md. 662, 119 A.2d 710 (1956).

7. For a more detailed discussion of Weeks, Wolf, Mapp and related cases, see the decision of this court in Hall v. Warden, 4 Cir., 313 F.2d 483, decided January 17, 1963.

was at home. They searched the place and discovered a distillery and some mash. Thereafter defendant returned home and was arrested. The officers had no warrant at any time. The seized articles were introduced in evidence against the defendant at his subsequent trial for violating the liquor laws. The resulting conviction was reversed by the Supreme Court because the search and seizure were held to be illegal. The Court quoted with approval from Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948), as follows:

> " * * * 'No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. * * * If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required.'" 365 U.S. at 615–616, 81 S.Ct. at 779, 5 L.Ed.2d 828.

The record in the instant case presents an even stronger showing of illegality because no permission whatsoever was given the officers to search the apartment.

In United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), the facts were that, without a warrant for search or arrest, but with reason to believe that the defendant had narcotics unlawfully concealed there, officers entered the hotel room of defendant's aunts, in their absence and in the absence of defendant, searched it and seized narcotics claimed by the defendant. The Government conceded that the search was illegal but the Court, nevertheless, took the occasion to say:

> " * * * Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes. * * * Only where incident to a valid arrest, * * * or in 'exceptional circumstances,' * * * may an exemption lie, and then the burden is on those seeking the exemption to show the need for it, * * *." 342 U.S. at 51, 72 S.Ct. at 95, 96 L.Ed. 59.

The state officers here—"those seeking the exemption"—have shown nothing to support any claim of exemption from the requirement of a warrant. The record is completely silent as to any circumstances, "exceptional" or otherwise, which would justify dispensing with a warrant for the search of Walker's apartment. Clearly the search was not incident to a lawful arrest because Walker was not arrested until after the search had been completed, and even then his arrest was at another place. Here, as in Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 467, 76 L.Ed. 951 (1932), where the defendant was arrested after a search had begun, the purpose of the search "was to secure evidence to support some future arrest" and it was patently illegal.[8] The use at trial of evidence so obtained was in violation of Walker's constitutional rights notwithstanding the law of the State of Maryland to the contrary.

In Hall v. Warden, 313 F.2d 483 (4th Cir., 1963), no question as to the legality of a warrantless search by non-federal officers to which Hall had not consented was raised at his trial or on appeal from his conviction, nor was objection made at the trial or on appeal to the use of the fruits of the search. There, the legality of the search was challenged for the first time in the post-conviction proceed-

---

8. Further support for this conclusion as to illegality is found in Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L. Ed.2d 1514 (1958); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Hall v. Warden, 313 F.2d 483 (4th Cir., 1963).

ings in the state court. Although in the instant case there was a belated motion before the trial court to strike the seized evidence, the first serious challenge to the legality of the search and the use of the fruits of the search was made in the post-conviction proceeding. In the Hall case, we held that the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, supra, was retrospective in operation and effect and that the search and seizure, both unconstitutional, were subject to attack in habeas corpus proceedings even though Hall's conviction had been affirmed and finalized before Mapp.

We again point to the decision of this court in Whitley v. Steiner, 293 F.2d 895, 898–899 (4 Cir., 1961), (as the majority opinion did in Hall v. Warden), for a statement of the rule that " * * where a state prisoner, asserting a denial of constitutional rights in connection with his conviction, has a remedy in the state court but fails to avail himself of it, and later finds himself without a state remedy, he may not have redress through federal habeas corpus. * * * Under such circumstances the petitioner has, to utilize what is probably the most appropriate legal doctrine, 'forfeited' his constitutional claim." However, in Whitley, this court recognized exceptions to the general rule including, inter alia, "where the petitioner can present other strong reasons justifying his failure; or finally, where there exist particular circumstances which are deemed to justify federal action." 293 F.2d 895, 899–900.

Considering the particular facts and circumstances in Hall v. Warden, the majority of this court determined that the case clearly came within the exceptions to the general rule as stated in the Whitley case. In Hall, the majority opinion states:

"Under Maryland law, objections at the trial to the admission of the evidence obtained as the result of the unlawful search would have been futile in the State court as Hall's counsel well knew. It may now appear to have been the wiser course

to object to the introduction of this evidence and to follow the same procedure as in Mapp v. Ohio. But we reiterate that the Supreme Court had refused, time after time and over a long period of years, to require of the states the adoption of the Weeks exclusionary rule. There was nothing in the history of the decisions to raise or encourage the hope that the Supreme Court might then be inclined to change the rule. * * * We conclude that, under these special circumstances, the failure of Hall to object to the admission of the fruits of the illegal search and to raise the question on appeal is not only understandable but excusable. The State of Maryland is hardly in position to insist that this failure constituted a waiver or forfeiture of Hall's constitutional rights. It is incredible that Hall would consciously and willingly have surrendered such a right, which was undoubtedly violated, had he known then what he knows now. * * * "

And so it is in the instant case. Had timely objection been made to the admission of the illegally obtained evidence when it was offered, there is nothing to indicate that the trial court would have excluded it simply because the searching officers had no warrant. Nor is there any reason to believe that Walker would have been successful had he raised the point on direct appeal. Under the Maryland rule of law, no search warrant was required but this rule was in direct and violent conflict with the later decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (June 19, 1961).

▇▇▇ The classic statement on waiver of constitutional rights is found in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938): "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." At the time of Walker's trial and first appeal, it is clear that he did not intentionally abandon a *known right* since

**128**

there was then no such right for him to abandon. That was before the Supreme Court's decision in Mapp.

This court is advised that the State of Maryland is preparing to seek review by the Supreme Court of the United States of our decision in Hall v. Warden. Until such time as we are advised by that Court that our interpretation and application of Mapp v. Ohio were incorrect, we adhere to the views stated by the majority in the Hall case.

Thus we conclude that the District Court should afford the State of Maryland a reasonable opportunity to retry Walker. In default of this, the District Court should order his release. To that end, the case will be remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.