James L. PRESLEY, Petitioner,

v.

Vernon L. PEPERSACK, Warden, Maryland Penitentiary, Respondent.

Civ. No. 14753.

United States District Court
D. Maryland.
March 25, 1964.

96

John H. Mudd and Thomas J. S. Waxter, Jr., Baltimore, Md. (by Court appointment), for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and John W. Sause, Jr., Asst. Atty. Gen. of Maryland, Baltimore, Md., for respondent.

WINTER, District Judge.

Petitioner seeks the issuance of a writ of habeas corpus, alleging that on April 11, 1960 he was unconstitutionally convicted of rape and sentenced to death in the Criminal Court of Baltimore. He was tried before Honorable James K. Cullen, Associate Judge of the Supreme Bench of Baltimore City, and a jury. The offense allegedly occurred on Sunday, January 3, 1960, at a cemetery in Parkville, Baltimore County, Maryland. The alleged victim was one Barbara Harris, who was eleven years old at the time of the commission of the crime. Petitioner is a white, divorced male, who was forty-one years old at the time.

Following his conviction, and the impositon of sentence, petitioner appealed to the Court of Appeals of Maryland, where the judgment of the lower court was affirmed, Presley v. State, 224 Md. 550, 168 A.2d 510 (1961). Certiorari was sought, unsuccessfully, from the Supreme Court of the United States, Presley v. State, 368 U.S. 957, 82 S.Ct. 399, 7 L.Ed.2d 389 (1962). A proceeding was next instituted under the Maryland Uniform Post Conviction Procedure Act, Annotated Code of Maryland, Article 27, §§ 645A et seq., and a hearing thereon was held on November 28, 1962 before Honorable Shirley B. Jones, Associate Judge of the Supreme Bench of Baltimore City, at which petitioner was present and testified and was represented by Court-appointed counsel. On January 7, 1963, Judge Jones filed a memorandum opinion denying the application for Post Conviction relief. An application to the Maryland Court of Appeals for leave to appeal was denied, Presley v. Warden, 231 Md. 638, 190 A.2d 783 (1963).

The petition here was filed June 5, 1963, and an order promptly entered staying petitioner's execution, appointing him counsel, and directing the respondent to answer the petition. At a subsequent date the matter was set down for hearing, testimony taken, memoranda filed and argument heard.

In this Court petitioner assails the validity of his conviction on four grounds. He claims, first, that certain evidence admitted in the trial against him was illegally seized, and that the use and admission of such evidence denied him rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. His second claim is that, involuntarily, he was caused to sign three written incriminatory statements, and the admission at the trial of these statements violated his rights under the Fourteenth Amendment to the Constitution of the United States. As a third basis for relief, petitioner asserts that he was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States. His last claim is that the prosecuting authorities at his trial suppressed alibi evidence favorable to him, and that this action on their part was a violation of the Fourteenth Amendment to the Constitution of the United States.

Petitioner litigated his second claimed ground of invalidity extensively before the trial court and the Maryland Court of Appeals and Judge Jones in the Post Conviction proceeding. He reasserts the same contentions here, as well as an argument based upon the decision in Hall v. Warden, Maryland Penitentiary, 313 F.2d 483 (4 Cir. 1963), that his confessions were procured in part by his confrontation by the fruits of the illegal search and seizure, which is the basis of his first claim for habeas corpus relief and that, therefore, his confessions were involuntary. Similarly, petitioner's third claimed ground of invalidity was litigated in the direct appeal and collateral proceedings, but he renews his arguments here, laying stress upon Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), all of which have either been decided since petitioner's conviction or were not considered in the direct and collateral review of petitioner's conviction.

This Court, after a careful review and consideration of the evidence adduced before it, including the record of the proceedings at the trial and the record of the Post Conviction proceedings, is of the view that evidence illegally obtained from petitioner was used to convict him and that, therefore, the writ should issue as prayed. Petitioner's release will not be ordered without first affording an opportunity to the State of Maryland to retry him, or to obtain appellate review of the order to be entered herein, or both. Because of this ultimate conclusion, petitioner's fourth claimed ground of invalidity is moot, because the exculpatory evidence which petitioner claims was suppressed is now known to petitioner and is available for use at any new trial should petitioner and his counsel conclude that they wish to present it.

Petitioner's second and third counts of alleged invalidity will not be further considered. It is more appropriate in the interest of comity that the courts of the State of Maryland be the first to consider the petitioner's contentions as they have been changed by later cases and as the facts concerning them may appear at a retrial, Hall v. Warden, Maryland Penitentiary, supra. In the Hall case, as here, it was concluded that Hall had been unlawfully convicted by evidence obtained through illegal search and seizure and there, as here, it was claimed that one of the results of this illegality was to induce incriminatory statements. Other than to call attention to certain legal principles, the Court did not undertake to pass upon petitioner's other contentions, saying (p. 489 of 313 F.2d):

"We reach the ultimate conclusion, as hereinafter stated, that the State of Maryland must be accorded an opportunity to retry Hall because of the admission in evidence of the articles found as the result of an unlawful search of Hall's hotel room. We can do no more than speculate as to what testimony will be offered at a retrial as bearing upon the voluntariness of the incriminating statements, admissions and confessions. We may assume that the evidence will follow the same general pattern as in the first trial, but we may assume further that the testimony concerning the circumstances of the disclosure to Hall of the results of the search will be more specific. Thus, we do not affirmatively find that error was committed but we shall call attention to certain principles which should serve as a guide upon a retrial."

The authorities referred to in Hall (p. 490) are the ones which should be considered in regard to the admissibility of petitioner's confessions at retrial and those cited by petitioner are the ones which should be considered in regard to petitioner's claim of denial of counsel. Because this Court assumes that if petitioner is retried the state court will develop the full factual and legal aspects of petitioner's second and third grounds of alleged invalidity, they will not be further considered.

## EXHAUSTION OF STATE REMEDIES

As a necessary part of any consideration as to whether the Court has the authority under 28 U.S.C.A. § 2241, to grant petitioner the relief he prays, there must be considered the question of whether petitioner has complied with 28 U.S.C.A. § 2254. More specifically, it must be considered and decided whether petitioner "'* * * has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner,'" 28 U.S.C.A. § 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Midgett v. Warden, Maryland State Penitentiary, 329 F.2d 185 (4 Cir. 1964); Rudolph v. Warden, Maryland Penitentiary, 217 F.Supp. 579 (D.C.Md.1963); Otten v. Warden, Baltimore City Jail, 216 F.Supp. 289 (D.C. Md.1963).

Not surprisingly, in light of the fact that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), one of the foundations on which petitioner's claim of denial of constitutional rights because of the use of illegally seized evidence is based, had not been decided, an examination of the opinion of the Court of Appeals of Maryland in Presley v. State, 224 Md. 550, 168 A.2d 510 (1961), as well as an examination of the briefs filed in that Court, disclose no mention of any claim that petitioner had been subjected to any illegal search and the fruits of the search used to convict him. Rather, appellate review was confined to a consideration of the questions of whether petitioner was entitled to have his sentence reversed, because the members of the jury which convicted him were possibly exposed to newspaper publicity concerning the case, whether evidence of his identification at a police lineup was admissible because of a claim that the lineup had been conducted under circumstances which were unfair and rendered the identification unreliable, whether there had been sufficient evidence to prove one of the essential elements of the crime, that of penetration, and whether petitioner's confessions were involuntary.

In her opinion, Judge Jones mentioned illegal search and seizure as an aspect of petitioner's claim that he was illegally arrested, but she did not decide the claim by petitioner that illegally seized evidence was used to convict him. The opinion dealt with petitioner's claim that his confessions were not voluntary, that exculpatory evidence was suppressed by the State, that he was denied effective assistance of counsel, that the State had knowingly used perjured testimony, and related contentions. The Maryland Court of Appeals, Presley v. Warden, 231 Md. 638, 639, 190 A.2d 783 (1963), stated simply that, "Application for leave to appeal from a denial of post conviction relief is denied for the reasons set out in the opinion of the court below;" hence, that Court did not pass upon this issue either.

The petition for hearing under the Post Conviction Procedure Act of Maryland, considered by Judge Jones, consisted of thirty-two legal-sized handwritten pages. At a later date petitioner filed a document entitled, "Supplementary, to Petition filed February 9, 1962, etc.," consisting of thirty-five handwritten pages. The latter was treated by Judge Jones as a supplementary, or amended, petition. From examination it appears to be either that, or a document more in the nature of a brief.

In an early page of the original petition, petitioner cited to Judge Jones the provisions of the Fourth Amendment to the Constitution of the United States containing the guarantees against unreasonable searches and seizures, and asserted that the search and seizure to which petitioner had been subjected violated this provision of the Constitution, as well as the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and the counterpart provisions, i. e., Articles 23 and 26 of the Maryland Declaration of Rights. In subsequent pages of the original petition, petitioner complained that at his trial there were admitted into evidence clothing and a list of names of young girls " * * * which the police had taken from defendants home during their illegal search and seizures," and that testimony in regard thereto was received, and also that testimony that there had been found in petitioner's apartment "sex books" which "were seized by the police during their illegal search and seizures" had been presented. Immediately following these allegations, petitioner argued that the use of such evidence had been outlawed by the United States Supreme Court.

In the supplementary petition, or brief, however denominated, petitioner argued at length his point that he had been convicted in part by illegally seized evidence. He referred to, and reviewed, early Supreme Court decisions, and specifically called attention to the most recent, Mapp v. Ohio, supra. His argument directly asserted that everything

seized from his home was "* * * unconstitutional as evidence, and was used by the state in violation of the Due Process Clause of Amendment 14, Section 1, United States Constitution."

In the transcript of the Post Conviction hearing it appears that at the very outset of the proceedings petitioner's Court-appointed counsel stated, "* * * the Petitioner himself feels that this is the time to raise the question of unlawful search and seizure, that at the time of the original trial Judge Cullen ruled that since this was a felony, that the unlawful search and seizure as regards to the State of Maryland was not applicable. However, recent Supreme Court cases have indicated that if that was the law, apparently it was at one time, that this is no longer a valid assertion on behalf of the State," to which Judge Jones replied, "Well I would deny your proffer on that point because under Post Conviction Proceedings I don't think the question of search and seizure is a question to be reviewed. It should have been reviewed on appeal and I believe it has been held that the Mapp decision is not retroactive." [1]

The Court concludes that, although petitioner made every reasonable effort to litigate the point which this Court finds meritorious, it received no consideration from the courts of the State of Maryland and, accordingly, the provisions of 28 U.S.C.A. § 2254, have been fully met.

## FACTS

A—*The Search and Seizure:*

The crime for which petitioner was prosecuted occurred on Sunday, January 3, 1960. Petitioner's apprehension occurred January 5, at approximately 1:30 P.M., under the following circumstances:

On January 5 petitioner lived at 411 Warren Avenue, Baltimore, Maryland, an inside row house constructed such that the front entrance was on Warren Avenue and the rear entrance on Hamburg Street. Petitioner had resided there for a period of two to three months in a second floor two-room apartment, rented from a Mr. and Mrs. Theodore Chresso, the owners of the property. Also resident at the same address was the eleven year old son of the owners, a certain Mrs. Betty Flowers and her three daughters, and a sister of Mrs. Chresso.

Petitioner's apartment consisted of one room which served as a combination living room and bedroom, and a second room which was a combination dining room and kitchen. Petitioner shared a bathroom on the second floor with the other occupants of the second floor. From the petitioner's apartment there was an entrance to the second floor hall, and another entrance which led directly to the outside. During daylight hours petitioner was accustomed to enter and leave his apartment by the hall doorway, which would mean that, when leaving, he would use the interior stairway and pass by the living room and through the front door used by other occupants of the premises. At night petitioner would enter and leave his apartment by his back door, for which he had a key.

On the first floor the premises known as 411 Warren Avenue are arranged such that the front door opens into a hallway leading to the rear of the house, where there is a dining room, a bath and a bedroom occupied by Mr. and Mrs. Chresso. Immediately to the left of the front door is a living room.

At approximately 1:30 P.M. on January 5 petitioner was standing in the doorway between the living room and the downstairs hall when the door was opened by one of Mrs. Flowers' children

---

1. By dictum in a subsequent case Judge Jones has stated more explicitly her view that Mapp v. Ohio, supra, has no retroactive application. See: Re: James D. Bucholtz, Application For A Proceeding Under the Post Conviction Procedure Act, P.C.Petition No. 597 Criminal Court of Baltimore, decided July 23, 1963, The Daily Record, July 29, 1963, leave to appeal den., Bucholtz v. Warden of Maryland Penitentiary, 233 Md. 614, 195 A.2d 690 (1963) (on ground of reasonable search as incident of lawful arrest). The rule required to be followed by this Court is directly to the contrary, Hall v. Warden, Maryland Penitentiary, 313 F.2d 483 (4 Cir. 1963); Walker v. Pepersack, 316 F.2d 119 (4 Cir. 1963).

in response to a knock. The police were at the door and, when the door was opened, they immediately entered, ascertained the identity of the petitioner, who could be immediately seen when the door was opened, arrested the petitioner, conducted a "pat down" search of his person, and removed him to the Central Police Station. In the course of arresting petitioner the police ascertained from him that he resided in the two-room apartment on the second floor which has been previously described.

After the police had taken petitioner to the Central Police Station, Officer Raymond Eibner and Detective George Olish returned to 411 Warren Avenue, gained entrance to petitioner's apartment, and conducted a search. It is undisputed that no search warrant had then been issued, or was ever issued at any time, authorizing the search, and respondent concedes, on the authority of Hall v. Warden, Maryland Penitentiary, supra, that petitioner's identification of the portion of the premises in which he resided did not constitute consent on his part that these premises be searched. No evidence has been offered to show that the landlords or any of the other occupants of 411 Warren Avenue did or did not consent to the search, or how the police gained entrance. It is also undisputed that as a result of the search the police seized and took back to the Central Police Station a quantity of clothing found in the apartment, and certain "sex magazines" and certain "sex books." It is disputed as to whether the police also discovered and took to the Central Police Station a list of names and addresses, in the handwriting of the petitioner, of young children, principally girls.

Petitioner contends that the list was obtained from his apartment during the search conducted while he was in custody. Respondent contends that the list was obtained from petitioner's person when a thorough search was made of him at Central Police Station following his arrest. The key to the dispute is disclosed by a ruling of the trial judge in regard to an objection to the admission of two articles of clothing alleged to have been found in petitioner's apartment, on the ground that they were the fruits of an illegal search, when he stated, " * * * I will overrule it because it is investigation of a felony." As pointed out in Walker v. Pepersack, supra, pp. 124–125 of 316 F.2d, prior to the decision in Mapp v. Ohio, supra, " * * * it has long been clear that, in felony cases, there is no bar under Maryland law to the admission of illegally seized evidence." Necessarily, the source of the list was a matter of no moment at the original trial, and no effort was made to establish clearly from whence it had been obtained.

In the transcript of the original trial it appears that Officer Raymond Eibner, in referring to the list, stated, " * * * I took [it] off of Mr. Presley." Lieutenant James Kemple (now deceased), the officer in charge of the case, in referring to the list described it as " * * * this is the list taken from the defendant Presley." When petitioner was being questioned in regard to the voluntariness of his confessions, his counsel referred to the list as having been "found in your room after you were arrested," and petitioner adopted this statement as part of his answer. He was cross examined about the list and, in the course of his cross examination, he stated that he had prepared the list while he was in the Maryland House of Correction, serving a sentence for another crime, that he had taken it with him when he was discharged from that institution, and had evidently placed it in a folder—"a stationery folder, or something"—and kept it in his apartment. He specifically denied that the police had removed the list from his pocket after his arrest, and stated that they had brought it to the station after his arrest. It is undisputed that other articles seized as a result of the search were taken to the Central Police Station and exhibited to petitioner after his arrest. However, petitioner in one of his confessions answered questions which referred to the list as having been in his possession, without evidencing any caveat to the possible inference that the ques-

tion referred to the list as being on his person.

Before this Court petitioner reiterated the testimony which he had given on cross examination at his trial, to the effect that the list of names of persons was not on his person but was somewhere in his apartment. Officer Eibner could recollect, when shown the list, that he had seen it before, but he did not know where, or where it had been obtained. The police officer could, however, remember that he had taken a newspaper clipping containing an account of the crime out of petitioner's pants pocket in the Homicide Squad room of Central Police Station immediately after petitioner's arrest. Petitioner does not deny that the newspaper clipping was on his person. Detective Olish, who conducted the search of petitioner's apartment with Officer Eibner, was not produced as a witness before this Court. Detective Furrie Cousins, who was in charge of the arrest, did not testify at the original trial, but he testified before this Court. He could not recollect whether he had participated in the search of petitioner's apartment, but he readily recalled that he had taken the newspaper clipping from the petitioner at the Central Police Station. When shown the list in question he could remember that he had seen it before, but could not remember where.

Among the records of the Police Department is a report prepared by Lieutenant Kemple which refers to the list as having been "found on the subject's person." [2] A report of Dr. Manfred S. Guttmacher, a psychiatrist to whom petitioner had been referred for examination, stated that the list had been taken from petitioner's apartment. Although the point was not litigated before Judge Jones, in her memorandum opinion, to which reference has been made, she referred to the list as having been "found in petitioner's apartment." The Court finds as a fact, from the preponderance of the evidence, that the apartment was the place from which the list was obtained as a result of the search. This has been petitioner's position throughout the proceedings beginning at a time when the place that the list was found was of little significance. The Court does not view the testimony of the police at the trial as sufficiently in conflict with petitioner's testimony at this time to render the latter unpersuasive. If treated as admissible, the record of Lieutenant Kemple is neutralized by the record of Dr. Guttmacher, because neither had any first hand knowledge of the origin of the list. There was no testimony before the Court at the habeas corpus hearing to controvert petitioner's reiteration of his previous testimony. Indeed, the inference which the Court draws from the inability of the police at this time to remember the source of the list, while they could remember so clearly the source of the newspaper clipping, is that petitioner's testimony is corroborated.

B—*Use of Fruits of Search and Seizure:*

Next to be considered is whether (a) the "sex books," (b) the list of children's names, and (c) the clothing, were used at petitioner's trial which resulted in his conviction.

Whatever books and magazines were seized from petitioner's apartment were not offered or admitted into evidence. However, through the testimony of Officer Raymond Eibner, who was called as a witness during the presentation of the State's case, the officer testified that as a result of the search, " * * * we found different sex books in his apartment." This was the only reference in a four day trial, but it was a reference made with regard to a then forty-one year old white divorced male accused of raping an eleven year old girl.

2. Petitioner's counsel objected to the admissibility of this memorandum on the ground that admissibility under the Federal Shop Book Rule (28 U.S.C.A. § 1732) was not established, citing Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), rehearing den., 318 U.S. 800, 63 S.Ct. 757, 87 L.Ed. 1163 (1943); and Hartzog v. United States, 217 F.2d 706 (4 Cir. 1954). In view of the Court's ultimate finding of fact, petitioner's motion to strike requires no ruling.

The list of names of children figured more prominently. As part of the State's case, the list was physically offered and admitted into evidence. Testimony was received from Lieutenant Kemple that the list was a document referred to in petitioner's confessions, which were also admitted into evidence, and that one of the girls whose name and address appeared on the list lived directly across the street from the eleven year old prosecuting witness. The lieutenant testified— although this testimony was subsequently stricken—that the police had communicated with every person, or their parents, on the list " * * * to see if there was any attempt or attempts." Lieutenant Kemple was permitted to testify that the oldest age of any person on the list was fifteen years.

Petitioner elected to testify generally in his own behalf, after having testified specially in regard to the voluntariness of his confessions, and he explained that the list was one which he had prepared while he was in the House of Correction in 1959, and that he had listed the names of certain children who had entered a pet contest, and also an athletic contest, to see if he could guess who had been the winners, as well as the name of some child who was in the hospital to whom he sent an unsigned convalescent card. Petitioner was cross examined at length about the list, but the substance of his testimony on direct examination was not shaken.

It seems clear that at the trial bundles of clothing taken from petitioner's apartment were shown, and the clothing was marked for identification, collectively, as a State's exhibit. Although the transcript does not reflect that the clothing was formally admitted into evidence as an exhibit, one of the assistant state's attorneys who prosecuted the case in framing a later question referred to the clothing as having been admitted, rather than just identified. Lieutenant Daniel J. Kennedy, who is assigned to the Crime Laboratory of the Baltimore City Police Department, testified that he made an examination of the articles of clothing, consisting of eight pairs of trousers,

some shirts, and numerous underclothes and handkerchiefs. These articles were all tested to determine the presence of blood and spermatozoa with essentially negative results, except that human blood insufficient for grouping was found on a pair of white undershorts and the fly of a pair of light blue trousers. There was medical evidence at the trial that the victim of the crime had suffered lacerations and bleeding of the exterior and interior genitalia. Evidence was also offered that the perpetrator of the crime had opened but not removed his clothing during the attack.

Throughout this testimony, numerous objections were lodged, on the ground that the tests disclosed nothing positive, whereupon, at the conclusion of Lieutenant Kennedy's testimony, petitioner's counsel moved that the testimony be stricken. A colloquy between counsel and the Court ensued, in which the probative value of the testimony was discussed, and the transcript discloses the following:

"THE COURT: All right, I will go along with you I will strike it all out.

"MR. SAUSE [Assistant State's Attorney]: Thank you. Mr. Roemer, please.

"THE COURT: Which means that you should not consider that evidence.

"Thereupon:

HERMAN ROEMER, being a witness of lawful age, having been first duly sworn, testified as follows:"

It appears, therefore, that at the same time the Court was telling the jury to disregard the evidence, the Assistant State's Attorney was calling his next witness.

It does not appear that the clothing which was seen by the jury, if admitted into evidence, was stricken from the evidence or, in any event, that the jury was told to disregard it. At the conclusion of the case, the Court, consistent with the Maryland rule that in criminal cases the jury is the judge of the law,

as well as the facts, gave the jury only an advisory instruction. In the Court's comments no mention was made as to what constituted the evidence from which the jury must decide the case, nor was the jury further admonished that it was its obligation to disregard any evidence which the Court had ordered stricken during the course of the trial, or any evidence offered but not admitted.

## CONCLUSIONS OF LAW

A—*Validity of the Search:*

■ Since there was no search warrant and concededly no consent, and no claim or showing that exceptional circumstances obviated the necessity of either, the rulings in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); and Walker v. Pepersack, 316 F.2d 119 (4 Cir. 1963), clearly establish that the search of petitioner's apartment was an unreasonable search, in violation of his constitutional rights.

B—*Illegal Use of the Fruits of the Search and Seizure:*

At the time petitioner was tried the law of Maryland, in regard to a prosecution for a felony, and the law of the United States, as last stated in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), permitted the use of evidence, which had been illegally obtained, in a prosecution in a state court. After petitioner had been convicted and the judgment entered thereon had become final, this rule was changed by Mapp v. Ohio, supra. In the Mapp case the Court overruled Wolf, and held that the concept of due process embodied in the Fourteenth Amendment to the Constitution of the United States included the guarantee against unreasonable searches and seizures expressed in the Fourth Amendment. As a result, the Court said (p. 655 of 367 U.S. p. 1691 of 81 S.Ct., p. 1090 of 6 L.Ed.2d 1081):

> "We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."

See also, Ker v. California, 374 U.S. 23, 30–34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

■ In this Circuit the Mapp doctrine has been held to be retroactive, Hall v. Warden, Maryland Penitentiary, supra; Walker v. Pepersack, supra. Although Mapp ordinarily requires the presentation of constitutional rights of this nature in accordance with state procedural requirements (367 U.S., at p. 659, footnote 9, 81 S.Ct. 1684, 6 L.Ed.2d 1081), it is the law of this Circuit that, with regard to prosecutions conducted before the decision in Mapp, the failure to object to the use of evidence illegally seized does not constitute a waiver of the right to complain, Hall v. Warden, Maryland Penitentiary, supra, p. 496 of 313 F.2d; Walker v. Pepersack, supra, pp. 127–128 of 316 F.2d. Not only does the Mapp doctrine apply to the admissibility of the physical articles seized, by its terms as above quoted it has application also to any testimony concerning them. See also: Wong Sun v. United States, 371 U.S. 471, 484, et seq., 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); McGinnis v. United States, 227 F.2d 598, 603 (1 Cir. 1955); Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487 (1959).

■ The application of these established doctrines inescapably results in the conclusion that petitioner was convicted in violation of his constitutional rights. The record conclusively shows that the

testimony concerning the "sex books," a fruit of the illegal search, and the list and testimony concerning it, all of which were elicited by the State as part of its direct case, were received in a determination of petitioner's guilt. It considered alone, each of these would warrant the issuance of the writ. The same is true with respect to the clothing if in fact the clothing was admitted.

 Testimony concerning the clothing technically was stricken; but the Court further concludes that where there was an interrupted statement to the jury that it disregarded the stricken testimony, not followed by any further elaboration that it was the jury's duty not to consider such evidence on the question of petitioner's guilt, there is no ground to apply the doctrine of harmless error, Fahy v. Connecticut, 375 U.S. 85, 84 S. Ct. 229, 11 L.Ed.2d 171 (1963); Williams v. United States, supra; cf. Rosenburg v. Ambrose, 129 Md. 418, 99 A. 680 (1916). The receipt and treatment of the testimony concerning the clothing are thus another ground to issue the writ. If the clothing was not admitted, the same conclusion follows, because it cannot be said that exhibition of the clothing to the jury without any instruction to disregard it was harmless error.

The writ will issue as prayed, subject to the following conditions: Issuance of the writ will be deferred for a period of thirty days to afford the State of Maryland an opportunity to seek appellate review of this decision, or to retry petitioner, or both. If within thirty days the State files a notice of appeal, issuance of the writ will be stayed until final termination of the appellate review, and for a period of thirty days thereafter. If within the initial thirty days after this decision, or the thirty days following final appellate review, the State shall determine to retry petitioner, and certify such fact to the Court, the issuance of the writ will be stayed for a further reasonable period to enable a new trial to be held.

In this case Court-appointed counsel have rendered valuable service to their client and to the Court by accepting, in the best traditions of the profession, their assignment, and by making a full, complete and highly competent presentation of his case. The Court expresses its appreciation and thanks.