COMMONWEALTH vs. RICHARD A. CEPULONIS.

Worcester. September 18, 1978. — May 24, 1979.

Present: Keville, Goodman, & Grant, JJ.

Practice, Criminal, Argument by prosecutor, Speedy trial. Evidence, Illustrative use of suppressed evidence, Judicial discretion. Identification.

Although the prosecutor at the trial of a defendant charged with armed robbery should not have used an item of suppressed evidence, a magazine clip containing ammunition for an M-16 rifle, in order to elicit testimony from a witness that the defendant had given her a similar object to hold for him, a mistrial was not required where the jury did not see the markings on it which indicated that it had previously been an exhibit at a voir dire hearing and where the judge gave immediate and forceful instructions which obviated the possibility of adverse speculation by the jury. [647-650]

At a criminal trial, any prejudice to the defendant from improper closing statements by the prosecutor was eliminated by the judge's immediate corrective instructions. [650]

A defendant incarcerated in Massachusetts either in Federal custody or awaiting trial was not entitled to notification of outstanding indictments under G. L. c. 277, § 72A. [651]

At a criminal trial, the judge did not err in ruling that a witness's in-court identification and out-of-court photographic identifications of the defendant were admissible in evidence. [652]

INDICTMENT found and returned in the Superior Court on September 12, 1973.

A motion to dismiss was heard by Meagher, J., and the case was tried before Travers, J.

Dyanne Klein Polatin for the defendant.

Daniel F. Toomey, Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from a conviction of armed robbery while

7 Mass. App. Ct. 646        647

Commonwealth v. Cepulonis.

masked. On July 7, 1973, at about 11:55 A.M., two masked men, each armed with a rifle, entered and robbed the Grafton Suburban Credit Union (credit union); as they entered, they fired into the ceiling. After the robbery, they fled in a white Ford station wagon.[1] None of the eyewitnesses to the crime could identify the robbers; but a woman, Mrs. Bolack, noticed the defendant and another sitting in a white Ford station wagon parked by the credit union just minutes before the robbery. Upon learning of the robbery, she informed the police, and later that afternoon at the police station she identified the defendant from photographs. He was indicted on September 12, 1973, and was arrested by the FBI in New York on September 15, 1973. At that time the FBI seized various items, including an M-16 rifle and a magazine clip containing ammunition for an M-16 rifle, from the trunk of an automobile.

The defendant moved to suppress the identification and the seized items; the motion to suppress the identification was denied, but the items were suppressed. The defendant argues that it was error to deny the motion to suppress the identification; he also argues that it was error to deny a pretrial motion to dismiss which he now urges violated his rights under G. L. c. 277, § 72A, and further that the prosecuting attorney's closing argument went beyond the evidence. However, the most serious contention made by the defendant is that the trial judge, as put in the defendant's brief, "permitt[ed] the prosecutor to place this suppressed evidence before the jury," and we discuss that first.

1. *The suppressed evidence.* In view of a ballistician's testimony — from an analysis of spent cartridges which had been recovered at the scene of the robbery — that the bullets had been fired from an M-16 rifle, the prosecuting

---

[1] Our narrative is based on the evidence most favorable to the prosecution and the inferences which the jury might reasonably have drawn.

attorney sought to connect the defendant with such a rifle without relying on the suppressed evidence. See *Commonwealth* v. *Marsh*, 354 Mass. 713, 720 (1968). Accordingly, he elicited from the defendant's former friend, Maureen May, whom he had called as a witness, that in September, 1972, the defendant had given her a box and a bag which she held for him for a few days and that on top of the bag was an object "that I knew." The prosecuting attorney then showed her the clip which had been suppressed, and she testified that it was "similar" to that object.

The defendant moved for a mistrial, specifying as one ground that the clip had been suppressed.[2] The court denied the motion, pointing out "for the record," that the jurors had not seen the clip at close view and had not seen any markings on it which would indicate that it had previously been an exhibit at a voir dire hearing. The judge also took precautions to see to it that such designation would be kept from the jury. He then ruled that the clip "is not evidence in the case . . . and . . . it shall not ever become evidence in the case. There has been no evidence that has in any way related this particular clip to this defendant." He went on to point out that "[t]he only evidence has been that this clip and the bullets in it resembled . . . bullets in a clip that she saw and received from the defendant under certain circumstances . . . . Therefore, at this point not only is this not an exhibit in the case and not evidence against the defendant, there also has been no testimony that in any way related this

_____

[2] The defendant also argued that the witness's observations were too remote in time and tended to indicate the defendant's propensity for crime. We think that the admission of these observations (though made about ten months before the actual robbery) was within the range of the judge's discretion, particularly in view of the uncommon type of clip here involved. See *Commonwealth* v. *Watkins*, 375 Mass. 472, 491-492 (1978); *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 229, cert. denied, 389 U.S. 916 (1967); *Commonwealth* v. *Russell*, 2 Mass. App. Ct. 293 (1974).

item to this defendant. For that reason I see little differ-
ence between this particular object [and] perhaps mil-
lions of other similar objects that exist in this world that
are also clips of a similar design, in fact, identical design
to this particular clip."

We agree with the trial judge. See *Cottman* v. *Donnelly*,
389 F. Supp. 1086, 1093-1094 (D. Mass. 1975). It would
have been more prudent for the prosecuting attorney to
have avoided any use of this clip (see *Commonwealth* v.
*Cepulonis*, 374 Mass. 487, 500 [1978]) and to have used
some other clip of the same type for comparison. The line
is thin between an innocuous use, as in this case, and the
exploitation of the fruits of an illegal seizure.[3] Moreover,
fairness to a defendant suggests that a prosecuting attor-
ney wishing to use an object (especially an uncommon
object) for comparison purposes should obtain it from a
legitimate source unconnected with the defendant so that
he might, without prejudice to himself, elicit the source
of the object and thus obviate the possibility of any ad-
verse speculation by the jury. In this case, however, the
same result was accomplished by the judge's careful in-
structions to the jury at the end of the closing argument
by the prosecuting attorney who had referred to Miss
May's observation of a clip "that looked exactly like this
or similar to this."[4] Though no objection was made to this
reference, the court carefully instructed the jury that

---

[3] The defendant has made no such claim. Contrast *McGinnis* v.
*United States*, 227 F.2d 598 (1st Cir. 1955); *Presley* v. *Pepersack*, 228
F. Supp. 95 (D. Md. 1964), cited in *Commonwealth* v. *Marsh*, 354 Mass.
at 720.

[4] The Commonwealth's reference was careful to avoid any indica-
tion that the clip was connected with the defendant. This was in
accordance with the emphatic admonition earlier by the judge at the
end of the colloquy regarding the defendant's motion for a mistrial.
"Let me say further so there will be no question about it. At no time
is the Commonwealth to, in any way, make any reference to this [clip]
... that in any way has it appear ... that it was possessed by this de-
fendant .... [A]t no time can it be referred to or be treated as if it
were actually evidence against this defendant. All right."

"[t]he evidence consists of the testimony of the witnesses; it consists of the items that are received in evidence and which will go with you to the jury room." He emphasized, "Now there is one small distinction that should be made so that there will be no question about it. . . . We have one item here which is a container for bullets which is called Exhibit 'A' for Identification. Well, that is a process that's used in the Courts to identify an object which has been referred to in the testimony. And here a witness made reference to that item in terms of its similarity — I don't know what the words were — to something she had observed on an earlier occasion. That was the only reason why that particular item was marked. And that item is not evidence. So that will not go to you in the jury room. It is in connection with her testimony that it has an effect and not in itself." Compare *Cottman* v. *Donnelly*, 398 F. Supp. at 1094.

2. *The prosecutor's closing argument.* The defendant complains of three instances in which the Commonwealth's argument went beyond the evidence. All of these were met with immediate corrective instructions by the judge which were sufficient in the circumstances. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 9-12 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Charles*, 4 Mass. App. Ct. 853, 854 (1976). We emphasize the need asserted in the *Borodine* case and repeated in *Commonwealth* v. *Haas*, 373 Mass. 545, 556-557 & fn. 11 (1977), *Commonwealth* v. *O'Brien*, 377 Mass. 772, 778-779 (1979), and *Commonwealth* v. *Villalobos, post* 905 (1979), for careful preparation of the prosecutor's closing argument to avoid such misconduct. See S.J.C. Rule 3:22A, PF 13(a), 377 Mass. 927 (1979), and PF 14, 377 Mass. 927 (1979).[5]

---

[5] These rules provide in pertinent part:

PF 13(a): "The prosecutor may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence."

PF 14: "It is unprofessional conduct for the prosecutor intentionally at trial to refer to or to argue on the basis of facts outside the record."

3. *General Laws c. 277, § 72A.* The defendant cannot prevail in his contention that G. L. c. 277, § 72A, requires that the indictment against him be dismissed because, as his counsel represented at the hearing on the motion to dismiss, "[f]rom February, 1974, up to the present, he has been incarcerated in institutions in this state." (The docket indicates that he was arraigned on January 21, 1975.) The short answer to his contention is that he has not shown that he was entitled to the notice mandated by that statute, since he has not established that his incarceration was as "a prisoner serving a term of imprisonment" — "i.e., one serving a sentence on a charge on which he previously has been convicted . . . ." *Commonwealth* v. *Dabrieo*, 370 Mass. 728, 740 (1976). Indeed, from the original papers in *Commonwealth* v. *Cepulonis*, 374 Mass. 500 (1978) (see *Flynn* v. *Brassard*, 1 Mass. App. Ct. 678, 681 [1974]), it appears that the defendant was convicted in February, 1974, in the United States District Court for the Eastern District of New York of possession of a machine gun and was sentenced to five years' imprisonment. In October, 1974, he was found guilty in the United States District Court for the District of Massachusetts of robbing a federally insured bank and received a sentence of twenty-five years, concurrent with the five years' sentence. On February 12, 1974, he was indicted in Massachusetts in connection with a bank robbery and convicted on May 24, 1976. Thus, throughout the period from February 12, 1974, to January, 1975, during which the defendant claims he was incarcerated in Massachusetts and entitled to notification under § 72A, he appears to have been either in Federal custody or incarcerated pending trial. Section 72A is not applicable to either status. *Commonwealth* v. *Lovell*, 6 Mass. App. Ct. 172, 174 (1978). *Commonwealth* v. *Dabrieo*, 370 Mass. at 740.

4. *Identification testimony.* We find no error in the judge's rulings that Mrs. Bolack's in-court identification and her out-of-court photographic identifications were admissible in evidence. The judge concluded at the end of a voir dire that any in-court identification she might make would be based entirely upon her observations and that the photographic identifications were not suggestive.[6] Compare *Commonwealth* v. *Moynihan,* 376 Mass. 468, 474-477 (1978); *Commonwealth* v. *Venios,* 378 Mass. 24 (1979). In addition to the findings made in the courtroom, the judge filed a further memorandum of detailed and careful findings. Our examination of the transcript of the voir dire indicates that there is ample basis for the findings.

*Judgment affirmed.*

---

[6] He stated: "I conclude on the facts that such an [in-court] identification by the witness would be based entirely upon the observations made by the witness on July the 7th, 1973, prior to noontime, on the two occasions in which she observed an individual seated in a white car near the place where a robbery occurred and about the time that the said robbery occurred; that the identification in the courtroom, if she does identify the defendant in the courtroom, will be based entirely on her observations at that time and place . . . .

"I state further that I conclude that there was at no time, whether it be the photographic identification on the same date, July the 7th, or a further photographic identification about a week ago, any impermissible suggestive conduct carried on by the police nor was there anything in the method used which would taint in any fashion [or] single out the photograph of this defendant or cause her to identify that photograph except that that identification by her at that time was again based entirely upon her perceptions earlier that day."